**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X

KIMMELL MCINTOSH and MAXINE  HENRY, :
                                              :

                      Plaintiffs,        :        Civil Action No.
                                              :

                v.                      :
                                              :        **COMPLAINT**

THE CITY OF NEW YORK, NEW YORK CITY :
POLICE DEPARTMENT, SERGEANT        :
STEPHEN VOLPE, in his individual and official :        **Jury Trial Demanded**
capacities, and POLICE OFFICER LEONARD :
CLARKE, in his individual and official capacities, :
                                              :

                      Defendants.     :

---------------------------------------------------------- X

Plaintiffs Kimmell McIntosh and Maxine Henry (collectively, "Plaintiffs"), for their Complaint against the City of New York, the New York City Police Department ("NYPD"), Sergeant Stephen Volpe, Shield No. 4757 ("Sergeant Volpe"), and Police Officer Leonard Clarke, Shield No. 27183 ("Officer Clarke") (collectively "Defendants"), hereby allege as follows:

## PRELIMINARY STATEMENT

1.      Racial profiling is a systemic problem and an every day reality for people of color residing in the New York City metropolitan area.

2.      Despite recent public awareness of the problem, people of color continue to be subjected to harsher scrutiny and treatment by the NYPD as compared to whites.

3.      On February 19, 2015, Ms. McIntosh and Ms. Henry were subjected to racially disparate treatment when they were arrested during their visit to a Massage Envy franchise in Brooklyn, New York ("Massage Envy").

4.      The phrase "Shopping While Black" ("SWB") refers to the experience at retail establishments endured by blacks, and other people of color, who are subjected to indiscriminate profiling that results in unwarranted suspicions of shoplifting and credit card theft.[1]

5.      This is precisely what happened here. In an unmistakable display of overt racial bias, the NYPD officers "suspected" and accused Plaintiffs of credit card theft without any evidence or basis except the officers' own subjective assumptions. The NYPD officers made such an assumption despite the fact that both women had only their personal credit cards in their possession, and that it was undisputed that Ms. McIntosh paid for the massages with her personal credit card.

6.      Shockingly, Sergeant Volpe and Officer Clarke concluded that Ms. McIntosh and Ms. Henry were criminals before ascertaining any information about the purported stolen credit card, or the underlying credit card transaction responsible for paying for Plaintiffs' massages.

7.      As detailed below, the only "crime" committed by Plaintiffs was the fact that they were black women in a white, upscale section of Brooklyn attempting to receive individual massages -- a luxury traditionally reserved for affluent whites.

8.      Without any justifiable basis, nor investigation, reasonable or otherwise, Sergeant Volpe and Officer Clarke humiliatingly placed Ms. McIntosh and Ms. Henry under arrest and transported them to the 84th precinct like common criminals where they were held for several hours in unsanitary cells before being released without charges.

---

[1]      The phrase evolved from the experience known as Driving While Black ("DWB"). *See generally* Gabbidon, Shaun L., *Racial Profiling by Store Clerks and Security Personnel in Retail Establishments, An Exploration of "Shopping While Black,"* Pennsylvania State University Journal of Contemporary Criminal Justice, Vol. 19, No. 3, August 2003, 345-364 (Shopping While Black ("SWB") is the "practice of racial profiling in retail settings;" similar to assumptions made when Blacks drive expensive cars or possess consumer items traditionally reserved for Whites, employees in the retail private sector make analogous assumptions, resulting in Blacks and other minorities being indiscriminately singled out as potential criminals).

9.      Of course Ms. McIntosh and Ms. Henry never attempted to use a stolen credit card nor had a stolen credit card in their possession and thus Defendants never charged nor even had any basis to charge them with any crime.  In fact, the now-voided arrest reports admit that Plaintiffs had not committed any crime at the time they were apprehended.

10.     This action seeks to fully vindicate Plaintiffs' rights and to hold accountable those who wrongly arrested and imprisoned Plaintiffs.

11.     Plaintiffs bring this action for declaratory, injunctive, and monetary relief to redress the unlawful discrimination and false arrest and detention committed against them by Defendants pursuant to Section 1983 of the Civil Rights Act of 1866, 42 U.S.C. § 1983 ("Section 1983"), for deprivation of the Fourth Amendment right to be free from unreasonable searches and seizures and the Fourteenth Amendment right to equal protection of the laws ("Equal Protection Clause"), and pursuant to Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").  Plaintiffs also assert claims against Defendants under the New York State Constitution, New York Civil Rights Law § 8 and the common law.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiffs' State law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so closely related to Plaintiffs' federal claim in that they form part of the same case or controversy.

13.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district.

## PARTIES

14.     Plaintiff Kimmell McIntosh is a black woman who is a citizen of the State of New Jersey and resides in Bergen County.

15.     Plaintiff Maxine Henry is a black woman who is a citizen of the State of New York and resides in Kings County.

16.     Defendant City of New York is a municipality organized and existing under the laws of the State of New York.  At all relevant times, the City of New York, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters, and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel.  In addition, at all relevant times, the City of New York was responsible for enforcing the rules of the NYPD and for ensuring that NYPD personnel obey the laws of the United States, State of New York, and City of New York.

17.     Defendant Sergeant Volpe was at all relevant times a police sergeant with the NYPD and, as such, was acting in the capacity of agent, servant and employee of the City of New York.  Sergeant Volpe was involved in the decision to arrest Ms. McIntosh and Ms. Henry without probable cause and/or failed to intervene in actions of his fellow officers when he observed them arresting Ms. McIntosh and Ms. Henry without probable cause.  Sergeant Volpe is sued in his individual and official capacities.

18.     Defendant Officer Clarke was at all relevant times a police officer with the NYPD and, as such, was acting in the capacity of agent, servant and employee of the City of New York.  Officer Clarke was involved in the decision to arrest Ms. McIntosh and Ms. Henry without probable cause and/or failed to intervene in actions of his fellow officers when he observed them

arresting Ms. McIntosh and Ms. Henry without probable cause.  Officer Clarke is sued in his individual and official capacities.

## PROCEDURAL REQUIREMENTS

19.     Prior to the filing of this lawsuit, Plaintiffs filed notices of claim with the City of New York, thereby satisfying the notice requirements of General Municipal Law § 50-e.

20.     Prior to the filing of this lawsuit, the City of New York demanded examinations of Plaintiffs pursuant to General Municipal Law § 50-h.  On October 13, 2015, the City of New York conducted those examinations, thereby satisfying any perquisite to the filing of this lawsuit imposed by General Municipal Law § 50-h.

21.     Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

22.     On February 19, 2015, Plaintiffs visited a Massage Envy franchise in Brooklyn, New York ("Massage Envy").   When they arrived, Plaintiffs checked in with the front desk employees for their scheduled massages.

23.     Massage Envy employees led Ms. McIntosh, Ms. Henry, and Ms. Henry's sister, Melanie Henry, into a waiting room located in the back of the store.

24.     While the three women were sitting and talking in the waiting room, Sergeant Volpe, Officer Clarke and two other police officers barged into the waiting room and demanded identification from a "Kimberly."

25.     Shocked and confused by the officers' sudden entry, Ms. McIntosh told Sergeant Volpe that her first name was "Kimmell."  Ms. McIntosh gave Defendants her driver's license.

26.     The officers compared Ms. McIntosh's driver's license with the credit card that she had used to pay for the massages, a Citibank MasterCard debit card in her name.

5

27.     After seeing that Ms. McIntosh's driver's license matched her credit card, Defendants told Ms. McIntosh that "this lady is saying you are using her credit card info," and declared that  Ms. McIntosh's Citibank MasterCard debit card was a fake.

28.     Ms. McIntosh's Citibank MasterCard Debit Card was not a fake, and it was the same one she had used to pay for her Massage Envy membership package that was debited from her account on a monthly basis.

29.     Defendants' inherently biased and illogical conclusion that Ms. McIntosh's card was not legitimate is racially disparate treatment, and a quintessential demonstration of SWB.

30.     Prior to arresting Ms. McIntosh and Ms. Henry, Defendants apparently had no information regarding *who* was accusing Plaintiffs of using a stolen credit card, the basis for this allegation or any information regarding the credit card, such as matching expiration dates or credit card numbers.

31.     In fact, Defendants apparently did not even know whether they were accusing Plaintiffs of using a stolen Visa, MasterCard or American Express card, nor did they have any information regarding the name of the bank issuing the credit card.

32.     Defendants' allegations were patently false and lacked any credibility.  In fact, at the time of the arrests, Defendants had no knowledge as to the identity of this "lady" who claimed her card was being used, the name and number on the credit card or any other information about the credit card.

33.     Defendants recklessly and intentionally failed to obtain any reliable facts before falsely accusing Plaintiffs of a degrading crime.  Instead, even after matching Ms. McIntosh's license to her Citibank MasterCard Debit Card, Defendants nonetheless "concluded" that it had to be a fake.

34.     Sergeant Volpe and Officer Clarke would not have jumped to such discriminatory conclusions if they had walked into the Massage Envy waiting room and saw three white women sitting there.

35.     Ms. Henry even tried to corroborate that Ms. McIntosh's card was not a fake by providing the officers with her own Citibank card, hoping that the police would realize that they were dealing with law abiding citizens.

36.     Incredibly, after a cursory look at the credit card, Defendants concluded that Ms. Henry's credit card had to also be a fake, along with another credit card in her possession.

37.     Sergeant Volpe and Officer Clarke offered an irrational and nonsensical reason for determining that Plaintiffs' credit cards were fake – specifically, that when they turned over Plaintiff's debit cards, the card number displayed on the front of the card appeared upside down on the back of the card.

38.     Such an obtuse observation would be comical but for the real and debilitating harm it caused.

39.     Despite the fact that the back of almost all major debit cards issued by Visa, Master Card and American Express display the card number in an upside down manner, Defendants arrested  Ms. McIntosh and Ms. Henry for possessing "fake" cards.

40.     Defendants forcefully grabbed Ms. Henry and handcuffed her.

41.     Defendants also forcefully pushed Ms. McIntosh into handcuffs.

42.     Plaintiffs were physically forced into separate police cars and taken to the 84th precinct.

43.     Ms. McIntosh and Ms. Henry were searched at the precinct and detained for several hours in unsanitary cells before being released without charges.

44.     Ms. McIntosh and Ms. Henry were never read their *Miranda* rights, despite Officer Clarke interrogating them in an attempt to coerce them into confessing to a crime that they did not commit.

45.     According to the voided arrest reports, Ms. McIntosh and Ms. Henry were both initially charged with violating N.Y. Penal Law 170.10(3), forgery of an official document, a class-D felony.

46.     N.Y. Penal Law 170.10(3) states: "A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or represent if completed: . . . (3) A written instrument officially issued or created by a public office, public servant or governmental instrumentality . . . ."

47.     There was no probable cause to charge Ms. McIntosh and Ms. Henry with N.Y. Penal Law 170.10(3) since all the credit and debit cards in their possession were real.

48.     In fact, there was no probable cause to believe that Ms. McIntosh or Ms. Henry committed any crime.

49.     The details in the arrest reports confirm that, at the time they were arrested, neither Ms. McIntosh nor Ms. Henry were in possession of forged documents or instruments and neither had committed any crime.

50.     In fact, the arrest reports confirm that Defendants had no information that could possibly form the basis of an arrest.

51.     Ms. McIntosh and Ms. Henry had never been arrested or accused of engaging in unlawful activity.

52.     During, and as a result of, the unlawful arrest and detention, Ms. McIntosh and Ms. Henry have suffered, among other things, depression, anxiety, and a fear of police, causing them to seek therapy.

**Pattern and Practice of Racial Profiling by the Individual Defendants**

53.     Plaintiffs' arrest and imprisonment are among the many examples of the discriminatory conduct perpetrated and perpetuated by NYPD officers, including Sergeant Volpe and Officer Clarke.

54.     Since 2009, the City has settled no less than five cases in which Officer Clarke was accused of a false arrest or illegal search.  *See Johnson v. City of New York*, 09 Civ. 02202 (E.D.N.Y); *Hutchinson v. City of New York*, 09-cv-01175 (E.D.N.Y.); *Mondesir v. City of New York*, 10 Civ. 03558 (E.D.N.Y.); *St. Hillaire v. City of New York*, 12 Civ. 04786 (E.D.N.Y.); *Sanders v. City of New York*, 15 Civ. 00348 (E.D.N.Y); *Derisse v. City of New York*, 12 Civ. 05192 (E.D.N.Y); *Thompson v. City of New York*, 14 Civ. 02662 (E.D.N.Y); *Moore v. City of New York*, 14 Civ. 04382 (E.D.N.Y).

55.     In *Johnson*, Officer Clarke was accused of entering the lobby of a building without probable cause and ordering Johnson and other men attending a party to get against the wall.  Allegedly, Johnson was searched without any finding of contraband but was nonetheless arrested along with some of the other men.  Johnson was allegedly released with a desk appearance and allegedly later falsely accused of possessing marijuana.

56.     In *Hutchinson*, Officer Clarke allegedly entered a home without probable cause or a warrant and physically assaulted and attempted to slam Justin Hutchinson to the floor while another officer physically assaulted his brother, Jordon Hutchison.  Officer Clarke allegedly forced Justin Hutchinson out of the home and onto the street where he was forced to lay on

police vehicles and the ground for approximately 45 minutes in sub-freezing temperatures, causing him to lose consciousness because he was not appropriately dressed.

57.     In *Mondesir*, Officer Clarke allegedly responded to a dispute over the return of defective merchandise by Mr. Mondesir at a Sprint store.  Believing that Mr. Mondesir was the cause of the defective merchandise, Officer Clarke allegedly took $400.00 from Mr. Mondesir and gave it to a Sprint store employee and placed Mr. Mondesir under arrest without any explanation of the charges.

58.     In *St. Hillaire*, Officer Clarke allegedly seized and searched Mr. St. Hillaire, who was stopped and frisked without cause.  Video footage of the incident allegedly confirms that Mr. St. Hillaire was not committing any crimes at the time he was stopped and that Officer Clarke allegedly forcibly detained and searched Mr. St. Hillaire.

59.     In *Sanders*, Officer Clarke alleged in a sworn statement that Mr. Sanders approached Clarke while he was arresting another person and Mr. Sanders refused his instruction to "stand back."   Video footage of the incident allegedly shows, however, that Officer Clarke lied about what occurred since the video allegedly showed Mr. Sanders calmly watching the arrest and then being arrested for no apparent reason.

60.     In *Derisse*, Officer Clarke allegedly stopped Mr. Derisse while walking down the street, seized and allegedly searched him without probable cause.  Mr. Desiree was arrested and charged with unlawful possession of a firearm – but allegedly no weapon was found on or near him.

61.     In *Thompson*, Officer Clarke allegedly approached Mr. Thompson while standing on the street, and he was then arrested and detained in the van for approximately 4 to 5 hours and

detained at the police station for approximately 3 additional hours.  No charges were ever filed against Mr. Thompson.

62.     In *Moore*, Officer Clarke allegedly stopped and arrested Mr. Moore after he spoke with two other people on the street.  Officer Clarke allegedly falsely accused Mr. Moore of having been handed money in exchange for a zip lock bag containing two pills.

63.     In the above cases involving Officer Clarke, there were several other officers that were alleged to have participated in the unlawful conduct, including Officer Clarke's supervisors.

64.     Sergeant Volpe also has a history of allegedly permitting and condoning unlawful arrests and detentions.

65.     In *Morris v. City of New York*, 15 Civ. 3799, Sergeant Volpe allegedly supervised officers while they engaged in an unlawful arrest and detention of Mr. Morris because he had a conversation with a friend while in his car.

66.     Upon information and belief, all of the plaintiffs in the above-referenced cases were black.

67.     Upon information and belief, there exist numerous internal and private complaints against Sergeant Volpe and Officer Clarke for engaging in unlawful arrests and detentions that remain unaddressed.

### Systemic Pattern and Practice of Racial Profiling by the NYPD

68.     The conduct engaged in by Sergeant Volpe and Officer Clarke in this action is illustrative of a broader pattern and practice of racially profiling minorities and detaining persons of color without probable cause by members of the NYPD.

69.     Examples that demonstrate this fact are simply too numerous to set forth in this complaint.  However, among those receiving public attention are the following:

### The Killing of Eric Garner

70.     On July 17, 2014, a 43 year-old black male, Eric Garner, died after an NYPD officer put him in a chokehold.  Purportedly, Mr. Garner was selling untaxed loose cigarettes when NYPD officers attempted to arrest him.  On a video recorded by an observer, Mr. Gardner told the approaching officers, "don't touch me, please."  In response to Mr. Garner's resistance to being handcuffed, a NYPD Officer put Mr. Garner in a chokehold and struggled to get him to the ground.  Despite hearing Mr. Garner, an asthmatic, repeatedly exclaim, "I can't breathe" eleven (11) times, the officer continued to attempt to get Mr. Garner to the ground.  The events were recorded on video and show the manner in which Mr. Garner struggled in the arms of the officer's chokehold.  The NYPD reported that Mr. Garner went into cardiac arrest and was pronounced dead shortly thereafter.  Mr. Garner was not in possession of loose cigarettes and told the officers so, and thus was unlawfully detained.  *See* http://gothamist.com/2014/07/20/nypd_strips_badge_gun_from_cop_invo.php#photo-1.

### The Killing of 16 year-old Kimani Gray

71.     On March 9, 2013, plainclothes NYPD officers shot and killed a black teenager, Kimani Gray, after he allegedly pointed a gun at them.  Witnesses claimed that he was not holding a gun and merely adjusting his waistband.  His family and friends stated that he was partially shot in the back, an indication that Mr. Gray may have been running away.  The officers were not charged. *See* http://www.nytimes.com/2013/03/11/nyregion/16-year-old-killed-by-new-york-police.html?_r=0;     http://www.nydailynews.com/new-york/nyc-crime/officers-teen-slay-avoid-criminal-charges-article-1.1884963.

**The Killing of Tamon Robinson**

72.     In April 2012, a 27 year-old black male, Tamon Robinson, was allegedly taking paving stones from the grounds of a city housing project to sell to scrap dealers when he was struck and killed by a NYPD vehicle.  The NYPD officers claimed that the vehicle was stopped and that Mr. Robinson "ran into" the car.  Multiple witness accounts described the NYPD vehicle as moving and striking Mr. Robinson. The City settled claims with Mr. Robinson's relatives for $2 million dollars. *See* http://www.nytimes.com/2014/08/09/nyregion/city-settles-suit-in-death-of-man-hit-by-a-police-car.html.

**The Killing of Ramarley Graham**

73.     On February 2, 2012, an 18 year-old black male, Ramarley Graham, was chased by NYPD officers from the street into his home and shot in his bathroom for unknown reasons. A very small amount of marijuana was later found in the house.  Mr. Graham was unarmed and no gun was found in the house.  Mr. Graham's grandmother and younger brother were present in the house when Mr. Graham was shot.  Purportedly, an officer threatened to also shoot Mr. Graham's 58 year-old grandmother.  One officer was charged with manslaughter but later dismissed on a procedural technicality. The case settled for $3.9 million dollars.  *See* http://www.nydailynews.com/new-york/bronx/family-ramarley-graham-settle-suit-city-3-9m-article-1.2098251.

**Floyd v. The City of New York**

74.     On August 12, 2013, following a nine-week trial, a Manhattan federal court held that the NYPD was liable for its pattern and practice of racial profiling and unconstitutional stopping and frisking of people of color in New York City. The landmark case challenged the obvious racial disparities regarding who is stopped and searched by the NYPD, and focused on

the lack of any reasonable suspicion to make these stops, in violation of the Fourth Amendment. The court determined that the NYPD had a systemic "cavalier attitude" with respect to a "widespread practice of suspicion-less stops" that displayed a "deeply troubling apathy towards New Yorkers' most fundamental constitutional rights."  *See Floyd v. City of New York*, 959 F. Supp. 2d 668 (S.D.N.Y. 2013).

75.     As set forth, Plaintiffs herein seek to fully vindicate their rights and to hold accountable those who wrongly arrested and imprisoned Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of Section 1983 – False Arrest)**

76.     Plaintiffs hereby repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

77.     Officer Clarke and Sergeant Volpe wrongfully and illegally arrested, detained and imprisoned Plaintiffs.

78.     The wrongful, unjustifiable, and unlawful arrest, detention, and imprisonment of Plaintiffs were without an arrest warrant, without their consent, and without reasonable suspicion or probable cause.

79.     Plaintiffs did not engage in any illegal conduct.

80.     Officer Clarke and Sergeant Volpe acted under color of law, in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by Officer Clarke and Sergeant Volpe were beyond the scope of their jurisdiction, without authority in law and an abuse of their powers.  Officer Clarke and Sergeant Volpe acted willfully, knowingly and with the specific intent to deprive Plaintiffs of their constitutional and statutory rights to be free from unreasonable searches and seizure and to due process of law

pursuant to the Fourth and Fourteenth Amendments secured by the United States Constitution, and are liable to Plaintiffs under 42 U.S.C. § 1983.

81.    The City of New York has implemented, enforced, encouraged and sanctioned a policy, practice, and/or custom of stopping, searching, seizing and/or arresting black individuals without the reasonable articulable suspicion of criminality or probable cause required by the Fourth and Fourteenth Amendments.

82.    The City of New York has been alerted to the use of false arrests by its police officers, including ones committed or involving Officer Clarke and Sergeant Volpe, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of Plaintiffs' constitutional rights in this case.

83.    The arrest and unlawful detention suffered by Plaintiffs were directly and proximately caused by the policies, practices, and/or customs devised, implemented, enforced, encouraged and sanctioned by the City of New York and official policy makers, including: (a) the failure to adequately and properly screen, train, and supervise NYPD officers; and (b) the failure to properly and adequately monitor and discipline NYPD officers.

84.    As a result of City of New York's policies, practices, and/or customs, its employees and/or agents, Officer Clarke and Sergeant Volpe acted with deliberate indifference to the Fourth and Fourteenth Amendment rights of Plaintiffs.

85.    The City of New York is liable for the above policies, customs and practices that caused the violation of Plaintiffs' constitutional rights.

86.    Officer Clarke is personally liable for the foregoing violation of rights as a result of his participation in the unlawful conduct.

87.     Sergeant Volpe is personally liable for the foregoing violation of rights as a result of his participation in the unlawful conduct.

88.     As a direct and proximate result of the foregoing unlawful conduct, Plaintiffs have suffered, and continue to suffer, monetary and/or other economic harm for which they are entitled to an award of monetary damages and other relief.

**SECOND CAUSE OF ACTION**
**(Violation of § 1983 - Equal Protection)**

89.     Plaintiffs hereby repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

90.     Defendants' unlawful actions had a discriminatory effect and were motivated by a discriminatory purpose.

91.     Plaintiffs, two black women, were at all times engaging in lawful conduct.

92.     Officer Clarke and Sergeant Volpe treated Plaintiffs differently than other Brooklyn Massage Envy customers by arresting and detaining Plaintiffs without probable cause or reasonable suspicion.

93.     Officer Clarke and Sergeant Volpe acted under color of law and in their individual and official capacities and within the scope of their respective employment as NYPD officers.  Said acts by Officer Clarke and Sergeant Volpe were beyond the scope of their jurisdiction, without authority in law, and an abuse of their powers.  Officer Clarke and Sergeant Volpe acted willfully, knowingly and with the specific intent to deprive Plaintiffs of the equal protection of the laws under the Fourteenth Amendment secured by the United States Constitution and are liable to Plaintiffs under 42 U.S.C. § 1983.

94.     The City of New York has implemented, enforced, encouraged and sanctioned a policy, practice, and/or custom of stopping, searching, seizing and/or arresting black individuals

without the reasonable articulable suspicion of criminality or probable cause required by the Fourth and Fourteenth Amendments.

95.    The City of New York has been alerted to the use of false arrests by its police officers, including ones committed or involving Officer Clarke and Sergeant Volpe, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of Plaintiffs' constitutional rights in this case.

96.    The arrest and unlawful detention suffered by Plaintiffs were directly and proximately caused by the policies, practices, and/or customs devised, implemented, enforced, encouraged, and sanctioned by the City of New York and official policy makers, including: (a) the failure to adequately and properly screen, train, and supervise NYPD officers; and (b) the failure to properly and adequately monitor and discipline NYPD officers.

97.    As a result of City of New York's policies, practices, and/or customs, its employees and/or agents, Officer Clarke and Sergeant Volpe acted with deliberate indifference to the Fourteenth Amendment rights of Plaintiffs.

98.    The City of New York is liable for the above policies, customs and practices that caused the violation of Plaintiffs' constitutional rights.

99.    Officer Clarke is personally liable for the foregoing violation of rights as a result of his participation in the unlawful conduct.

100.    Sergeant Volpe is personally liable for the foregoing violation of rights as a result of his participation in the unlawful conduct.

101.    As a direct and proximate result of the foregoing unlawful conduct, Plaintiffs have suffered, and continue to suffer, monetary and/or other economic harm for which they are entitled to an award of monetary damages and other relief.

## THIRD CAUSE OF ACTION
### (42 U.S.C. § 1981)

102.    Plaintiffs hereby repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

103.    Defendants' unlawful actions had a discriminatory effect and were motivated by a discriminatory purpose.

104.    Plaintiffs, two Black women, were at all times engaging in lawful conduct.

105.    Plaintiffs intended to enjoy the benefits, privileges, terms, and conditions of their contractual relationship with Massage Envy.

106.    Defendants interfered with Plaintiffs' right to make and enforce contracts as enjoyed by white citizens.

107.    Officer Clarke and Sergeant Volpe treated Plaintiffs differently than other Brooklyn Massage Envy customers by arresting and detaining Plaintiffs without probable cause or reasonable suspicion.

108.    Officer Clarke and Sergeant Volpe acted under color of law and in their individual and official capacities and within the scope of their respective employment as NYPD officers.  Said acts by Officer Clarke and Sergeant Volpe were beyond the scope of their jurisdiction, without authority in law, and an abuse of their powers.  Officer Clarke and Sergeant Volpe acted willfully, knowingly and with the specific intent to interfere with Plaintiffs' right to make and enforce contracts and to discriminate against Plaintiffs on the basis of their race and skin color.

109.     The City of New York has implemented, enforced, encouraged and sanctioned a policy, practice, and/or custom of stopping, searching, seizing and/or arresting black individuals

without the reasonable articulable suspicion of criminality or probable cause required by the Fourth and Fourteenth Amendments.

110.    The City of New York has been alerted to the use of false arrests by its police officers, including ones committed or involving Officer Clarke and Sergeant Volpe and Officer Clarke's interference with other contractual relationships, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of Plaintiffs' constitutional rights in this case.

111.    The arrest and unlawful detention suffered by Plaintiffs were directly and proximately caused by the policies, practices, and/or customs devised, implemented, enforced, encouraged, and sanctioned by the City of New York and official policy makers, including: (a) the failure to adequately and properly screen, train, and supervise NYPD officers; and (b) the failure to properly and adequately monitor and discipline NYPD officers.

112.    As a result of City of New York's policies, practices, and/or customs, its employees and/or agents, Officer Clarke and Sergeant Volpe acted with deliberate indifference to Plaintiffs' rights under 42 U.S.C. § 1981.

113.    The City of New York is liable for the above policies, customs and practices that caused the violation of Plaintiffs' rights.

114.    Officer Clarke is personally liable for the foregoing violation of rights as a result of his participation in the unlawful conduct.

115.     Sergeant Volpe is personally liable for the foregoing violation of rights as a result of his participation in the unlawful conduct.

116.    As a direct and proximate result of the foregoing unlawful conduct, Plaintiffs have suffered, and continue to suffer, monetary and/or other economic harm for which they are entitled to an award of monetary damages and other relief.

## FOURTH CAUSE OF ACTION
### (New York State Constitution and Civil Rights Law § 8)

117.    Plaintiffs hereby repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

118.    Officer Clarke and Sergeant Volpe arrested and detained Plaintiffs without probable cause or reasonable suspicion that a crime had been committed.

119.    Officer Clarke and Sergeant Volpe acted in bad faith and with a discriminatory motive in arresting and detaining Plaintiffs.

120.    Officer Clarke and Sergeant Volpe are personally liable for the foregoing violation of rights as a result of their participation in the unlawful conduct.

121.    The City of New York is liable for the conduct of Officer Clarke and Sergeant Volpe because they were acting within the scope of their employment.

122.    As a direct and proximate result of the foregoing unlawful conduct, Plaintiffs have suffered, and continue to suffer, monetary and/or other economic harm for which they are entitled to an award of monetary damages and other relief.

## FIFTH CAUSE OF ACTION
### (False Arrest and Imprisonment)

123.    Officer Clarke and Sergeant Volpe confined Ms. McIntosh and Ms. Henry by placing them in handcuffs and detaining them.

124.    Plaintiffs were conscious of their confinement when they were placed in handcuffs, transported to the 84th precinct, and placed in unsanitary holding cells.

125.    Plaintiffs did not consent to their confinement.

126.    The confinement was not privileged because there was no reasonable suspicion or probable cause that Plaintiffs had committed any crime.

127.    As a direct and proximate result of the foregoing actions, Plaintiffs have suffered, and continue to suffer, monetary and/or other economic harm for which they are entitled to an award of monetary damages and other relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray for relief against Defendants as follows:

a.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New York;

b.    An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

c.    An award of damages against Defendants in an amount to be determined at trial, plus pre-judgment and post-judgment interest, to compensate Plaintiffs for all monetary and/or economic harm, including, but not limited to, compensation for psychological and emotional distress, mental anguish, stress and anxiety, embarrassment and humiliation; and all other monetary and/or non-monetary losses suffered by Plaintiffs;

d.    An award of punitive damages in an amount to be determined at trial;

e.    An award of Plaintiffs' reasonable attorneys' fees and costs to the fullest extent permitted by law; and

f.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.


Dated: December 17, 2015
       New York, New York

                            Respectfully submitted,

                            **WIGDOR LLP**

                            By: _____
                                  Jeanne M. Christensen
                                  Bryan L. Arbeit

                            85 Fifth Avenue
                            New York, New York 10003
                            Phone: (212) 257-6800
                            Facsimile: (212) 257-6845
                            jchristensen@wigdorlaw.com
                            barbeit@wigdorlaw.com

                            *Counsel for Plaintiffs*